# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANGELES GISSELLE ALDANA PEREZ, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-01534-XR |
| | § | |
| KRISTI NOEM, IN HER OFFICIAL | § | |
| CAPACITY AS SECRETARY OF THE | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY; TODD LYONS, IN HIS | § | |
| OFFICIAL CAPACITY AS ACTING | § | |
| DIRECTOR OF U.S. IMMIGRATION | § | |
| AND CUSTOMS ENFORCEMENT; | § | |
| MIGUEL VERGARA, IN HIS OFFICIAL | § | |
| CAPACITY AS DIRECTOR OF THE | § | |
| SAN ANTONIO (DILLEY) FIELD | § | |
| OFFICE OF ENFORCEMENT AND | § | |
| REMOVAL OPERATIONS; JOSE | § | |
| RODRIGUEZ, JR., IN HIS OFFICIAL | § | |
| CAPACITY AS WARDEN OF THE | § | |
| SOUTH TEXAS FAMILY | § | |
| RESIDENTIAL CENTER; AND DAREN | § | |
| K. MARGOLIN, IN HIS OFFICIAL | § | |
| CAPACITY AS DIRECTOR OF THE | § | |
| EXECUTIVE OFFICE FOR | § | |
| IMMIGRATION REVIEW; | § | |
| *Defendant* | § | |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Angeles Gisselle Aldana Perez's Petition for a Writ of

Habeas Corpus (ECF No. 1) and the Federal Respondents' response (ECF No. 4).[1] After careful

consideration, the petition (ECF No. 1) is **GRANTED**.

---

1 Respondent Jose Rodriguez, Jr., Warden of the South Texas Family Residential Center has joined the Federal Respondents' response. *See* ECF No. 5.

## BACKGROUND

Petitioner Angeles Gisselle Aldana Perez is a native and citizen of Nicaragua who entered the United States in November 2022 without inspection. ECF No. 1 ¶ 2. Shortly after her entry, she was apprehended by the Department of Homeland Security ("DHS"), charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), placed in "full" removal proceedings under 8 U.S.C. 1229a, and released on parole. *See* ECF No. 1 ¶ 3. Petitioner fled Nicaragua after years of political persecution by security forces aligned with the socialist regime of Daniel Ortega and has applied for asylum. *See id.* ¶ 11.

From the time of her arrival in this country, Ms. Aldana remained under the supervision of Immigration and Customs Enforcement ("ICE"), including a requirement to appear for scheduled check-ins with the Dallas Field Office of Enforcement and Removal Operations. She has faithfully attended each appointment and demonstrated full compliance with the government's supervision regime. *Id.* ¶ 4.

On October 29, 2025, Ms. Aldana appeared at the Dallas Field Office as instructed. *Id.* ¶ 5. Despite having been granted parole, her cooperation with ICE, and her pending asylum claim, Ms. Aldana was arrested upon her arrival at the check-in and taken into ICE custody, without warning and without an opportunity to speak with her immigration counsel. *Id.* ¶ 5. ICE issued Petitioner a Notice to Appear ("NTA"), charging her as removable under INA § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182 (a)(6)(A)(i)) and placing her into removal proceedings under INA § 240 (codified at 8 U.S.C. § 1229a). *Id.* ¶ 6; *see* ECF No. 1-4 (NTA).

Petitioner has been detained since her arrest and is currently detained at the South Texas Family Residential Center in Dilley, Texas. *Id.* ¶ 8. She asserts that her continuing detention without bond violates the INA and her constitutional due process rights. ECF No. 1.

## LEGAL STANDARD

A habeas petitioner must show she is "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that she is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## DISCUSSION

The parties dispute both whether the Court has jurisdiction to order the relief Petitioner has requested and whether Petitioner is entitled to that relief. The Court considers its jurisdiction over this case before turning to the merits. *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first.").

## I.    This Court Has Jurisdiction

As a general matter, this Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. §§ 1331 and 2241. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law."). Respondents insist that provisions of the INA—specifically 8 U.S.C. §§ 1252(g) and (b)(9), § 1225(b)(4), and § 1226(e)—strip the Court of jurisdiction here. ECF No. 4 at 10–11. The Court disagrees.

### A.    Section 1252(g) Does Not Preclude Jurisdiction

Respondents assert that the Court lacks jurisdiction under Section 1252(g), which provides:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). But Section 1252(g) "applies only to three discrete actions that the Attorney general may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) (quoting 8 U.S.C. § 1252(g)). It "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders and thus does not implicate [S]ection 1252(g)." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025) (cleaned up) (quoting *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000)).

Petitioner is not challenging removal proceedings but seeks release—in habeas corpus—because Respondents have unlawfully detained her. *See* ECF No. 1 ¶ 37. "Such claims are not barred by § 1252(g)." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025).

### B.    Section 1252 (b)(9) Does Not Preclude Jurisdiction

Respondents argue that 8 U.S.C. § 1252(b)(9) precludes jurisdiction. ECF No. 4 at 1, 2, 8, 11. Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

This provision "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up). It does not "'sweep within its scope claims with only a remote or attenuated connection to the removal of an alien'. . . [or] preclude review of claims that 'cannot be raised efficaciously within the administrative proceedings' already available." *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (quoting *Aguilar v. I.C.E.*, 510 F.3d 1, 9 (1st Cir. 2007)). Finally, it applies only "[w]ith respect to review of an order of removal." 8 U.S.C. § 1252(b); *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025); *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *2 (D. Colo. Oct. 24, 2025).

Respondents' argument that Section 1252(b)(9) bars this Court's jurisdiction over the petition fails for at least two reasons. First, Petitioner's claim—that Respondents lack "legal authority to subject [her] to mandatory detention under § 1225 instead of detention with a bond hearing under § 1226(a)"—"is not a review [of] an order of removal, the decision to seek removal, or the process by which removability will be determined." *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3 (S.D. Cal. Nov. 4, 2025); *Aguilar*, 510 F.3d at 11 ("[T]he legislative history indicates that Congress intended to create an exception for claims 'independent' of removal."). Because Petitioner challenges only her ongoing detention during the pendency of her removal proceedings, "§ 1252(b)(9) does not present a jurisdictional bar." *See Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018).[2]

---

[2] With respect to § 1252(b)(9), *Jennings* expressly rejected an overbroad reading of "arising from" as "uncritical literalism" that leads "to results that no sensible person could have intended." 583 U.S. at 293–94 (citation modified).

Second, Petitioner cannot "efficaciously" raise her claims "'within the administrative proceedings' already available." *Duron*, 898 F.3d 647 (quoting *Aguilar*, 510 F.3d at 10). The core of this dispute is whether Petitioner can be detained without bond hearing—that is, with no administrative opportunity to contest her detention—pending a removal determination. If Section 1252(b)(9) precluded this habeas petition, Petitioner's detention would be "effectively unreviewable," *Jennings*, 583 U.S. at 293, especially considering the BIA's novel position that immigration judges lack authority to even *entertain* bond requests, *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025). "By the time a final order of removal was eventually entered, the allegedly [illegal] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review." *Jennings*, 583 U.S. at 293.

## C.    Section 1225(b)(4) Does Not Preclude Jurisdiction

Curiously, Respondents assert that, under Section 1225(b)(4), judicial review of Petitioner's removability is available only through the court of appeals following a final administrative order of removal. ECF No. 4 at 10–11. But even under Respondents' flawed theory that the Petitioner is challenging the adjudication of her removal proceedings (rather than her detention), Petitioner's challenge to a presumably unsuccessful application for admission would not arise under Section 1225(b)(4), which governs challenges brought by an immigration officer to favorable admissibility decisions made by another officer:

> The decision of the examining immigration officer, if *favorable to the admission of any alien*, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

---

Indeed, *Jennings* described the "expansive interpretation of § 1252(b)(9)" proposed by Respondents as "absurd," and inevitably "lead[ing] to staggering results." *Id*. at 293.

8 U.S.C. § 1225(b)(4) (emphasis added).

Section 1225(b)(4) is plainly inapplicable to Petitioner, who has not received any favorable determination of her admissibility. Moreover, Section 1225(b)(4) applies to challenges to favorable admissions decisions brought by *other immigration officers*. It has nothing to do with the scope of DHS's detention authority or the federal courts' jurisdiction over challenges to detention. Indeed, as another court in this District recently observed, § 1225(b)(4) does "not speak to the distinction between detention and deportability that this Court has explained is essential to the jurisdictional analysis." *See Erazo Rojas*, 2025 WL 3038262, at *2. Accordingly, Respondents' reference to 8 U.S.C. § 1225(b)(4) is simply misplaced.

### D.    Section 1226(e) Does Not Preclude Jurisdiction

Respondents also challenge the Court's jurisdiction under 8 U.S.C. §1226(e). *See* ECF No. 4 at 1. Unlike the § 1252 subsections, this provision relates to claims brought by people challenging their immigration detention:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). As at least one other court in this District has noted, "this section shields only the Attorney General's *discretionary* detention decisions." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025) (emphasis added). It does not preclude, e.g., "challenges to the statutory framework that permits the alien's detention without bail." *Demore v. Kim*, 538 U.S. 510, 516 (2003); *see, e.g.*, *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (federal courts "retain jurisdiction to review [a noncitizen's] detention insofar

as that detention presents constitutional issues, such as those raised in a habeas petition.") (citing *Kim*, 538 U.S. at 516–17).

Given Petitioner's due process challenges, "[t]his is unlike a case in which a bond hearing was held, an individualized assessment was made regarding the appropriateness of detaining a noncitizen, and, in the IJ's discretion, they were denied bail." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, at *5. "In such circumstances, the Court would likely lack jurisdiction to consider a collateral attack on that denial." *Id.* (citing *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019) ("Ultimately, Diaz Ortiz disagrees with the immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness. The Court does not have jurisdiction to hear such a challenge.")).

In this Court's view, even setting aside Petitioner's constitutional claims, Section 1226(e)'s jurisdictional bar is inapplicable for a much simpler reason: by taking the position that Petitioner's detention is *mandatory* under Section 1225(b)(2), *see* ECF No. 4 at 2–4, 8, 11–12, 15–17, the Attorney General has waived any argument that Petitioner's detention was an exercise of her discretion protected from judicial review under Section 1226(e).

## II.     Petitioner's Detention Is an Unlawful Application of 8 U.S.C. § 1225(b)(2)

Moving to the merits, Petitioner claims that Respondents lack statutory authority under the INA to detain her without a bond hearing and are depriving her of due process by doing so. *See* ECF No. 1 at 11–16. Because the Court agrees with Petitioner's statutory arguments, it need not reach her constitutional claims.

A.    **Legal Framework for Immigration-Related Detention**

The INA prescribes three basic forms of detention for noncitizens in removal proceedings.

First, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and other recent arrivals *seeking admission* under 8 U.S.C. § 1225(b)(2). As the Supreme Court has explained, Section 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Jenning*, 583 U.S. at 297. Noncitizens detained under this provision may be released only through DHS's exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A). *Id.* at 300.

Second, the INA authorizes the discretionary detention of noncitizens in standard, non-expedited (i.e., "full") removal proceedings before an immigration judge under 8 U.S.C. § 1226. *See* 8 U.S.C. § 1229a; § 1226(a) ("[A]n alien *may* be arrested and detained. . . .") (emphasis added).[3] Noncitizens in detention under Section 1226(a) are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

Last, the INA also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). This provision is not at issue in the instant matter.

For nearly three decades, Respondents consistently considered noncitizens present in the United States without having been admitted or paroled as detained under 8 U.S.C. § 1226(a), thus entitling them to bond hearings. *See, e.g.*, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (stating that "[d]espite being applicants for admission, aliens who

---

[3] Noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention. *See* 8 U.S.C. § 1226(c).

are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination"). Consistent with this longstanding understanding, the Supreme Court recently confirmed that "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. On the other hand, "the language of §§ 1225(b)(1) and (b)(2) is quite clear": "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id*. at 297, 303.[4]

Earlier this year, Respondents adopted a novel theory that noncitizens who are present in the United States without admission or parole are ineligible for bond hearings. In July 2025, Todd Lyons, Acting Director of ICE, issued an internal memorandum (the "Lyons Memorandum") explaining that the agency had "revisited its legal position" and "determined that [Section 1225] of the Immigration and Nationality Act (INA), rather than [Section 1226], is the applicable immigration detention authority for all applicants for admission."[5] Ultimately, the Board of Immigration Appeals ("BIA") adopted this position in a precedential decision, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025), holding that all noncitizens who entered the country without inspection—no matter how long they have been present in the country—are subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2).

---

[4] Even if this language in *Jennings* is dicta, courts in the Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (quoting *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

[5] "The existence of the memorandum was first reported by the Washington Post on July 14, 2025. Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, Washington Post (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-bond-hearings/ [https://perma.cc/LN4F-FJDG]. The memorandum itself was subsequently leaked by legal advocacy groups. *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 24, 2025) [https://perma.cc/4Q6X-GAZC][.]" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 n.10 (D. Mass. 2025).

**B.    Petitioner Cannot Be Detained Under Section 1225(b)(2)**

Petitioner argues that Section 1225(b)(2) does not permit her detention and that she may only be detained under Section 1226(a). *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025). Respondents contend, on the other hand, that Petitioner falls under Section 1225(b)(2) because she is an "applicant for admission," which includes a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1).

The question is whether Section 1225(b)(2) applies to all noncitizens who, like Petitioner, are already in the country but entered without inspection. If so, Section 1225(b)(2) makes Petitioner's detention mandatory If not, Section 1226(a) applies, Petitioner's detention is discretionary, and she is entitled to a bond hearing if she remains detained. *See, e.g.*, *Belsai D.S.*, 2025 WL 2802947, at *5.

This is not a matter of first impression. In recent months, courts across the country, including this one, have rejected Respondents' broad interpretation of Section 1225(b)(2). *See, e.g.*, *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same); *Acea-Martinez v. Noem*, No. 5:25-cv-1390-XR, ECF No. 9. These opinions rely on several rationales, from statutory language and context to legislative history and longstanding agency practice. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases); *see, e.g.*, *Cardona-Lozano v. Noem*, No. 1:25-CV-1784-RP, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) (noting that the BIA's interpretation in *Matter of Hurtado* was not entitled to any deference under *Loper Bright Enters. v. Raimondo*, 603 U.S.

369 (2024), and was unpersuasive given its "inconsistency with prior pronouncements"); see also *id.* at * 5 (noting that Respondents' interpretation would render a recent amendment to the INA, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), "effectively meaningless").

The Court finds those opinions generally persuasive and will not restate every rationale therein. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement."). Instead, it will focus on the two factors that most clearly command against Respondents' broad interpretation: Section 1225(b)(2)'s plain language and the Supreme Court's interpretation of the relevant statutes.

To start, Section 1225(b)(2)'s language is clear. It states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings. 8 U.S.C. § 1225(b)(2)(A). In other words, Section 1225(b)(2) requires someone to be detained if three conditions are met: (1) the person is an "applicant for admission"; (2) the person is "seeking admission"; and (3) an "examining immigration officer determines" the person "is not clearly and beyond a doubt entitled to be admitted." *Id.*; *see, e.g.*, *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025).

The term "applicant for admission" includes a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Because Petitioner is present in the United States and has not "lawful[ly] ent[ered] . . . after inspection and authorization by an immigration officer," she is an "applicant for admission." *Id.* §§ 1101(a)(13)(A); 1225(a)(1).

But at the time of Petitioner's detention, she was not "seeking admission." Again, admission refers to "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). When ICE detained her, Petitioner was not seeking entry, much less "lawful entry . . . after inspection and authorization." *See Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008), *as amended* (June 5, 2008) ("Under th[e] statutory definition, 'admission' is the lawful *entry* of an alien after inspection, something quite different, obviously, from post-entry adjustment of status." (emphasis in original)); *Lopez Benitez*, 2025 WL 2371588, at *6 (noting that Respondents' interpretation "would render the phrase 'seeking admission' in [Section] 1225(b)(2)(A) mere surplusage"). Because Petitioner is not "seeking admission," ICE may not detain her under Section 1225(b)(2).

If that were not enough, the Supreme Court recently discussed the relationship between Sections 1225 and 1226: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under [Sections] 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under [Section 1226]." *Jennings*, 583 U.S. at 289.

Thus, Section 1225(b)(2) applies to noncitizens "seeking admission," and Section 1226 applies to noncitizens "already in the country." Respondents may not detain Petitioner pursuant to Section 1225(b)(2). Because the Court concludes Section 1225(b)(2) is inapplicable, Petitioner's present detention necessarily falls under 8 U.S.C. § 1226, which entitles her to a bond hearing. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("[T]he Court concludes that § 1225(b)(2) is not applicable to Mr. D.S., he is subject to the discretionary detention regime under § 1226(a), and his continued detention with a bond

hearing is contrary to the laws of the United States. If Respondents seek to continue detaining Mr. D.S., they must provide him with a bond hearing.").

## III.     Appropriate Relief

Because Petitioner cannot be detained under Section 1225(b)(2), the remaining option is Section 1226. As Respondents do not claim that Petitioner is being detained under Section 1226, however, "the Court sees no reason to consider" Section 1226 as a basis for Petitioner's current detention. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025). Her detention is unlawful, and habeas relief is proper. *See also* ECF No. 6 at 3 (Respondents' acknowledgment that "[t]he only relief available to Petitioner through habeas is release from custody").

Petitioner requests attorney's fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A). Because fees under the EAJA are not available in habeas corpus proceedings like this one, that request is denied. *Barco v. Witte*, 65 F.4th 782. (5th Cir. 2023).

## CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**. It is **ORDERED** that:

1.     Respondents **RELEASE** Petitioner Angeles Gisselle Aldana Perez from custody, under appropriate conditions of release, to a public place by **no later than 12:00 p.m. on December 6, 2025.**

2.     Respondents **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before her release;**

3.     The parties shall **FILE** a Joint Status Report **no later than 12:00 p.m. December 8, 2025**, confirming that Petitioner has been released; and

4.     Respondents are **ENJOINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker pursuant to 8 U.S.C. § 1226.

The Clerk is **DIRECTED** to **CLOSE** this case. A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 5th day of December, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE